UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AKBAR SALAAM,

Petitioner,

-vs-

**No. 06-CV-6077(DGL)(VEB)**
**REPORT AND RECOMMENDATION**

MICHAEL GIAMBRUNO, Superintendent,
Wyoming Correctional Facility,

Respondent.

## INTRODUCTION

*Pro se* petitioner Akbar Salaam ("Salaam" or "petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for the issuance of a report and recommendation with regard to the disposition of Salaam's habeas petition. For the reasons that follow, I recommend that the petition be dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Salaam's conviction stems from his abduction and assault of his ex-girlfriend, for which he was charged with attempted murder in the second degree, kidnapping in the second degree, rape in the first degree, and assault in the second degree. On November 14, 2002, Salaam pled guilty on the advice of trial counsel to one charge of kidnapping in the second degree in satisfaction of the pending indictment. He was sentenced within the agreed-upon range to a determinate term of ten years followed by five years of post-release supervision.

On appeal, Salaam's appellate counsel questioned whether the waiver of the right to

appeal was effective to preclude defendant's challenge to his sentence as harsh and excessive. Salaam submitted a *pro se* supplemental brief alleging ineffectiveness of counsel and insufficiency of the evidence. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed Salaam's conviction in a summary order, citing *People v. Hidalgo*, 91 N.Y.2d 733, 737 (N.Y. 1998). *People v. Salaam*, 17 A.D.3d 1050 (App. Div. 4th Dept. 2005). The New York Court of Appeals denied leave to appeal on June 22, 2005, and, upon reconsideration, denied leave again on August 25, 2005.

Salaam filed four motions to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. All of these applications were denied by the trial court.

Salaam's initial Petition "raise[d] 2 grounds set forth on direct appeal." Petition ("Pet.") at 3, ¶10 (Docket No. 1). Under the heading "Petitioners [sic] Appellate Issues", Salaam sets forth a claim that the prosecutor allowed allegedly perjured testimony to be presented to the grand jury by Detective Borrelli, who took a statement from petitioner. *See* Pet. at 4-6, ¶¶22-38 (Docket No. 1). Salaam asserted that Detective Borrelli presented inconsistent testimony about whether or not he read Salaam the *Miranda* warnings. The next heading in the Petition is "Appeal Waiver was Ineffective", under which Salaam details a claim that his waiver of his right to appeal was knowing and voluntary. *See* Pet. at 6-7, ¶¶39-42 (Docket No.1).

Before respondent answered the petition, Salaam filed an Amended Petition (Docket No. 4). In this pleading, Salaam only raised one claim, presented as "Ground One" on an attached page. Salaam alleged that his guilty plea was coerced in that the prosecutor proffered false evidence during the plea proceeding by stating that the proof would establish that the victim was abducted. Salaam contends that since the victim was not put into, but rather voluntarily got into

petitioner's minivan, she was not "kidnapped." In his Answer, respondent addressed only this claim, noting that it had been raised on one of Salaam's C.P.L. § 440.10 motions. The trial court, in denying the C.P.L. § 440.10 motion, held that since Salaam admitted that he tied up the victim and bound and gagged her with duct tape, it was immaterial that she was not "put into a van", as the prosecutor had stated. Although stating in his Memorandum of Law that Salaam had raised only this claim, respondent also argued that Salaam's guilty plea was knowing, voluntary and intelligent.

After receiving respondent's opposition papers, Salaam filed a Motion to Amend/Correct Petition for a Writ of Habeas Corpus ("Motion to Amend") (Docket No. 10), in which he stated that he had mistakenly failed to repeat the grounds asserted in his first habeas Petition in the Amended Petition. He indicated that he still wished to assert the two claims under the "Appellate Issues" heading in the Petition, and he did not realize that he had to include them in the Amended Petition. Respondent has opposed the motion to amend, arguing that it should be denied because Salaam has failed to address the issue of whether his claims have been exhausted. For the reasons set forth in my Order (Docket No. 16) filed concomitantly with this Report and Recommendation, I granted Salaam's Motion to Amend/Correct the Petition (Docket No. 10), and proceed on all of the claims in the Petition (Docket No. 1) and Amended Petition (Docket No. 4). However, I nevertheless recommend that all of the claims be dismissed because they are either without merit or have been waived as a result of Salaam's guilty plea.

## DISCUSSION

### *General Principles Applicable to Habeas Petitions*

Federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not subject to federal habeas review. *E.g.*, *Estelle v McGuire*, 502 U.S. 62, 67-68 (1991). Thus, to be entitled to habeas relief, a petitioner must demonstrate that his conviction resulted from a state court decision that violated federal constitutional law. *Id.* at 68.

Federal court may not grant relief on an exhausted federal claim that has been adjudicated on the merits in the state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also Williams v. Taylor..

### *Ground One: Alleged Perjury by Detective Borrelli in the Grand Jury*

This claim relates to an alleged fraud perpetrated by Detective Borelli and the prosecutor with regard to who read the *Miranda* warnings to Salaam and obtained the waiver of his constitutional rights. Detective Borelli testified in the grand jury that he did not read the *Miranda* warnings to Salaam; rather, a Detective Kobler did. On the pre-printed section of the statement signed by Salaam at the police station, it indicates that recitation of the *Miranda* warnings and the taking of the statement was done by Detective Borelli. Salaam reasons that his statement therefore was fraudulent and should not have been submitted to the grand jury. Salaam is correct

that there is a discrepancy between the testimony and the statement. However, this does not establish that his statement was coerced or that his statement was for any reason inadmissible. Notably, Salaam does not dispute that he *was* given the *Miranda* warnings. This claim is without merit.

Furthermore, this claim has been waived by Salaam's voluntary guilty plea. The Supreme Court has held that a defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), including the privilege against compulsory self-incrimination, the right to confront one's accusers, the right to a jury trial, the right to a speedy trial, and the right to require the prosecutor to prove the crime beyond a reasonable doubt, *id.*; *accord*, *e.g.*, *Miller v. Angliker*, 848 F.2d 1312, 1319 (2d Cir.), *cert. denied*, 488 U.S. 890, (1988). When a defendant has admitted under oath, in open court, his guilt with regard to the charged offense, he may not raise constitutional violations antecedent to the entry of the guilty plea. A defendant's only recourse is to "attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*[*v. Richardson*, 397 U.S. 759, 771, 763 (1970)]. *Tollett v. Henderson*, 411 U.S. at 267; *accord United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996); *Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea.").

There is no indication that Salaam's plea was anything but knowing and voluntary. Tellingly, he does not assert such a claim in his Petition or Amended Petition. As respondent

states, even before the prosecutor set forth what he expected to prove at trial, Salaam informed the trial court that he was prepared to plead guilty. Resp't Mem. at 7 (citing P.3-10). Salaam denied that he was being forced or coerced into pleading guilty, and indicated that he understood the consequences of what he was doing. *Id.* (citing P.5-7, 9-10).

The doctrine of *Tollett* bars Salaam's claim concerning alleged improprieties in the grand jury. The crux of the claim is that Detective Borrelli's testimony to the grand jury contained an untrue statement about whether he read the *Miranda* warnings to petitioner prior to taking his statement. The substance of this claim does not relate to the voluntariness of Salaam's guilty plea, and it therefore is barred from habeas review. *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (citing *United States v. Coffin*, 76 F.3d at 497; *Tollett v. Henderson*, 411 U.S. at 267). I accordingly recommend that it be dismissed.

***Ground Two: Ineffective Waiver of Appellate Rights***

Salaam contends that his waiver of his appellate rights was invalid because the trial court "did not ask petitioner to explain in his own words his understanding of what this waiver meant . . . ." Pet. at 6, ¶42 (Docket No. 1). This claim is without merit.

The "right to appeal in a criminal case is not of constitutional magnitude." *United States v. Teeter*, 257 F.3d 14 (1st Cir.2001) (citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Given that a defendant may waive constitutional rights as part of a plea agreement, *id.* (citing *Town of Newton v. Rumery*, 480 U.S. 386, 393, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987); *Brady v. United States*, 397 U.S. 742, 752-53, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)), "it follows logically that a defendant ought to be able to waive rights that are purely creatures of statute," *id.*

First, Salaam has not demonstrated that, as a matter of state law, the trial court was obligated to have him articulate what he describes as "the subtle concept of an appeal," Pet. at 6, ¶42 (Docket No. 1). *See People v. Ludlow*, 42 A.D.3d 941, 942, 840 N.Y.S.2d 859, 860 (App. Div. 4th Dept. 2007) ("Defendant contends that his waiver of the right to appeal was not knowingly, intelligently and voluntarily entered because County Court failed to elicit from defendant, in his own words, his understanding of the waiver. We reject that contention. '[T]here is no requirement that the trial court engage in any particular litany' when accepting a defendant's waiver of the right to appeal.'") (quoting *People v. Callahan*, 80 N.Y.2d 273, 283 (N.Y. 2006)); *see also People v. Hidalgo*, 91 N.Y.2d at 737 ("Defendant further confirmed that she understood that she could not return to 'this Court or to any court' to set aside her 'conviction', and that she had discussed this with counsel. Under these circumstances, we conclude that defendant knowingly and intelligently waived her right to appeal from any and all aspects of her case, including the sentence.").

More important, Salaam has not established an error of federal constitutional magnitude. Significantly, Salaam has pointed to no federal precedent standing for the proposition that the trial court must employ specific language when apprising a defendant pleading guilty of the individual rights eschewed. Furthermore, the trial court here explained to Salaam in fairly plain terms what the right to appeal encompassed, first obtaining an affirmative response from Salaam when he asked him, "Do you understand that you are waiving your right to appeal. Do you understand that?" The judge then explained that "[t]hat means you can't go to a higher court and have a higher court review this entire matter . . . and you can't even appeal the sentence because you know what the sentence basically is going to be, the parameters." When asked if he

understood that concept, Salaam replied, "Yes, I do." P.12-13.

Salaam has failed to show that the state court's enforcement of the waiver of his appellate rights denied him of any rights under New York state law or the federal Constitution. *Cf. United States v. Ciampi*, 419 F.3d 20, 25 (1st Cir. 2005) ("Although it is true that the district court never asked Ciampi specifically or directly: 'Do you understand the provision waiving your appellate and habeas rights,' we have prescribed no 'mandatory language for such an inquiry because the circumstances will vary from case to case, from defendant to defendant, and from plea agreement to plea agreement. We caution only that the court's interrogation should be specific enough to confirm the defendant's understanding of the waiver and her acquiescence in the relinquishment of rights that it betokens.'") (quotation omitted). Accordingly, I recommend that his claim attacking the voluntariness of his waiver of appellate rights be dismissed. *See Nicholas v. Smith*, No. 02 CV 6411(ARR), 2007 WL 1213417, at *10-11 (E.D.N.Y. Apr. 24, 2007) (rejecting habeas petitioner's argument that the state court's failure to make perfectly clear that petitioner was being asked to waive his right to appeal as part of his plea bargain, rather than forfeiting it as a matter of law as part of the guilty plea).

***Ground Three: Misrepresentation by the Prosecutor Regarding the Proof of Petitioner's Guilt***

Finally, Salaam asserts that the prosecutor's representation to the trial court as to what the proof was going to show was different than what was contained in a statement to the police attributed to the victim. In the victim's statement–which petitioner has attached to his Amended Petition–she says that Salaam, her ex-boyfriend, "picked [her] up in a minivan." She says, "He was giving me a ride to my mother's house." However, once she was in the van, Akbar pointed a "small silver gun" at her head and told one of his companions to tie her up. The victim attempted

to escape from the van, but Akbar hit her in the forehead with the gun, causing her to bleed "a lot". He then taped her hands and her mouth "all around her head" with duct tape. *See* Statement of Sonya Anderson, attached to Petitioner's Amended Petition (Docket No. 4).

First, it is unsurprising that the victim got into the van voluntarily, as she was under the mistaken impression that she was going to be given a ride to her mother's house by petitioner, with whom she had a child. Second, the proof available to the prosecution sufficiently fulfilled the statutory requirements for kidnapping in the second degree. Based on the documentation submitted by Salaam to this Court, it appears that when the victim tried to leave, she was physically restrained from doing so; pistol-whipped by petitioner; and then bound and gagged with duct tape. Thus, the facts to which Salaam allocuted, and which he offers in support of his claims, certainly demonstrate that he had the "intent to prevent [her] liberty," N.Y. Penal Law § 135.00(2). For purposes of establishing guilt of the crime with which Salaam was charged, it is immaterial whether the victim was "put into the van" or entered the vehicle on her own volition.[1] This claim is frivolous and should be dismissed.

---

[1] "A person is guilty of kidnapping in the second degree when he abducts another person." N.Y. Penal Law § 135.20. For purposes of this section of the Penal Law, "'[a]bduct' means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force." N.Y. Penal Law § 135.00(2). The Penal Law defines "restrain" as "restrict[ing] a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful." N.Y. Penal Law § 135.00(1). A person is "restrained" "without consent" when the defendant accomplishes this by, *inter alia*, " by . . . physical force, intimidation or deception . . . ." N.Y. Penal Law § 135.00(1).

## CONCLUSION

For the reasons set forth above, I recommend that petitioner's Petition (Docket No. 1) and Amended Petition (Docket No. 4) be denied and that a certificate of appealability not issue with respect to any of petitioner's claims as he has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).

/s/ *Victor E. Bianchini*

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: March 31, 2008
Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Rochester, New York
March 31, 2008.